Maxine K. Dubebstein, J.
Separate proceedings were instituted by the petitioner in which she sought declarations of paternity and orders of support for two out-of-wedlock children born to her on January 23, 1966 and March 31, 1967. A stipulation was entered into by both attorneys that both proceedings be consolidated into one hearing under which separate judgments may be entered.
Respondent entered a denial of all the allegations and requested a blood grouping test. On consent, a second and a third blood grouping test were also performed. Three different doctors, all eminently qualified experts, performed these first three tests.
For purposes of clarification, the court ordered, and parties consented to, a fourth test performed jointly by doctors No. 1 and No. 2. (Doctors No. 2 and No. 3 had arrived at the same main conclusions. Doctor No. 1 arrived at a different result on his first test.)
*1041 Counsel for both parties requested a ruling on the admission of the conclusion as a result of the final blood grouping test in which doctors No. 1 and No. 2 reached the same result that had previously been reached by doctors No. 2 and No. 3.
The attorney for the petitioner claimed that the conclusion is not admissible in that it does not exclude the respondent.
Section 532 of the Family Court Act provides for blood tests and their reception in evidence ‘ ‘ but only in cases where definite exclusion is established.”
The interpretation of the blood grouping test agreed upon by all of the doctors clearly indicates that the respondent could not have been the father of both children (Quinn and Christopher). Their expertise establishes the fact that if the respondent had sired one of these children, he could not have fathered the other. Under the circumstances, the court finds the blood grouping test convincingly excludes the respondent as the father of one of the infants. Accordingly, the court rules that the test should be admitted in evidence.
The interpretation agreed upon by all three doctors states, quote:
No. 2.
BLOOD OF GROUP AND SUBGROUP M-N TYPE RH-HR TYPE
1. Anthony M.................... O N RHjrh
2. Beverly J...................... A2B MN Rh^rh
3. 1st child....................... A2 MN rh"rh
4. 2nd child...................... A2 N Rh¿rh
Interpretation :
Two parents, of groups O and A2B, respectively, can have children of group A2 and B, not O, Aw AXB or A2B.
Two parents of types N and MN, respectively, can have children of type N and MN, and not of type M:
Two parents of types Rlqrh and Rh2rh can have children of types rh, rh'rh, rh"rh, rh'rh", Rho, Rlqrh, Rh2rh and RhjRh2, but not of types rh'rh', rh"rh", rhy, RlqRiq, Rh2Rh2, Rhz. Since Q belongs to group A2, type MN and type rh"rh, and Christopher to group A2 type N, and type Rh2rh, there is nothing in their bloods incompatible with these requirements.
However, if Anthony M. belongs to genotype R1R° or R°r' (two of the possibilities for his type Rlqrh), he could be the father of Christopher J. who is type Rh2rh, but he then could not be the father of a child of type rh"rh, which is the type to which Q belongs. On the other hand, if Anthony M. belongs to genotype Bir (the third possibility for a person of type Rhxrh), he could *1042 be the father of Quinn J. who is type rh"rh, provided that Beverly J. ’s genotype is R°r", but he could not be the father of a child of type Rh2rh, to which Christopher belongs. Thus, according to these Rh-Hr blood test results, Anthony M. could be the father of Quinn J. or Christopher J., but not of both.
As signed: Alexander S. Wiener, M.D.
No. 3.
Following are the results of the blood grouping studies done on the above parties:
GROUP A. M. B. J. QUINN CHRISTOPHER 0 a2b A intermediate A intermediate
Rho.............. ............ pos pos neg pos
rh'............... neg neg neg
rh"............... ............ neg pos pos pos
hr'............... ............ pos pos pos pos
hr"..............: ............ pos pos pos pos
M................ ............ neg pos pos neg
Ñ................ ............ pos pos pos pos
There is no exclusion of paternity on the bases of AB, 0, and M N groupings. The analysis of the Rh genotypes, Rh groups, and possible combination genotypes indicates that paternity cannot be excluded for either child when considered completely separately. However, the two children must be considered together and Anthony M. cannot be the father of both children. He can be excluded as the father of one or the other. These findings concur with the previous analysis of Dr. Alexander Wiener.
As signed: Robert L. Rosenthal, M.D.
results: blood of group and subgroup
1. Beverly J................................... A2B
2. 1st son Q. .................................. Ai,2
3. 2nd son C................................... Ai,2
Interpretation :
These tests were done in the presence of Dr. Lester Fox. As can be seen the reactions confirm the conclusion that the two sons are-b'oth of the intermediate subgroup A1j2.
As signed: Alexander S. Wiener, M.D.
Even though the admission of the test tends to impair the credibility of the petitioner, the court will not at this time, dismiss the consolidated petition herein, but will accord the peti *1043 tioner an opportunity to submit clear and convincing proof of paternity which the statute requires, if she he so advised.
Counsel for the petitioner shall notify the court five days prior to the adjourned date, February 2, 1972, whether petitioner intends to submit additional proof.
Copy of such notice shall be sent to counsel for respondent indicating, in addition, the identity of the child which petitioner will then claim respondent is responsible for; and upon the failure of the petitioner to make such selection, the petitions in the consolidated proceeding will be dismissed.